IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL J. TURSKI, JR., | ) | Case No. 3:20-cv-2380 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| NEIL TURNER, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

On April 16, 2018, Jessica Cureton found her ex-boyfriend, Michael J. Turski, Jr., inside her house, where he beat her violently.  The next day Turski told Cureton over the phone that he would kill her if she said anything about the assault.  He also stopped by her house and work looking for her.  In doing so, Turski videorecorded himself knocking at Cureton's front door to establish that his motive was solely to retrieve his grinder.  Cureton later reported that her house had been broken into and some items were missing.  Turski pleaded no contest pursuant to *North Carolina v. Alford*[1] to aggravated burglary, kidnapping, second-degree burglary, and menacing by stalking.  The trial court found Turski guilty and sentenced him to 10 years' imprisonment.

Turski, pro se, now petitions for a writ of habeas corpus under 28 U.S.C. § 2254, raising five[2] claims for relief.  ECF Doc. 1; ECF Doc. 1-1.  Turski asserts:

**Ground One:** There was an insufficient factual basis to sustain his conviction for second-degree burglary, and trial counsel was ineffective when he advised Turski

---

[1] 400 U.S. 25 (1970).

[2] Although Turski's petition only lists four grounds for relief, the attached supporting memorandum lists five.  *Compare* ECF Doc. 1 at 5–10, *with* ECF Doc. 1-1 at 4–18; *see also* Fed. R. Civ. P. 10(c).

to enter his plea despite the factual insufficiency (ECF Doc. 1 at 5; ECF Doc. 1-1 at 4–10).

**Ground Two:** Turski's rights to counsel and due process were violated when the municipal court failed to (a) inform him at his initial appearance of his rights under Ohio Crim. R. 5 and 44 and (b) determine whether Turski was eligible for appointed counsel (ECF Doc. 1 at 7; ECF Doc. 1-1 at 11–12).

**Ground Three:** Turski's Sixth Amendment rights were violated when the municipal court allowed him to proceed pro se on April 19 and 20, 2018 without first advising him of the risks of self-representation (ECF Doc. 1 at 10; ECF Doc. 1-1 at 12–13).

**Ground Four:** Turski's right to due process was violated when the municipal court failed to hold a preliminary hearing in compliance with Ohio Crim. R. 5(B)(2), and municipal court counsel was ineffective for not testing the state's evidence at the invalid hearing (ECF Doc. 1-1 at 14–17).

**Ground Five:** Turski's due process and equal protection rights were violated when the municipal court dismissed his charges without a valid *nolle prosequi* by the state (ECF Doc. 1-1 at 18–20).

Respondent Warden Tom Watson[3] filed a return of writ.  ECF Doc. 5.  And Turski filed a traverse and a supplement to his traverse.  ECF Doc. 6; ECF Doc. 7.

Because Turski's claims are noncognizable and/or meritless, I recommend that his claims be DISMISSED and that his petition for writ of habeas corpus be DENIED.  I further recommend that Turski not be granted a certificate of appealability.

## I.    State Court History

### A.    Municipal Court

On April 18, 2018, Turski was arrested on charges of burglary, aggravated burglary, felonious assault, and abduction.  ECF Doc. 5-1 at 7 (municipal court docket); ECF Doc. 5-2 at 3 (municipal court transcripts).

---

[3] The current warden of North Central Correctional Complex, where Turski is confined, is Tom Watson. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he proper respondent [in a habeas case] is the warden of the facility where the prisoner is being held.").

On April 19, 2018, Turski appeared before the Toledo Municipal Court for arraignment. ECF Doc. 5-2 at 3.  At the outset, a public defender ("PD") stated that Turski did not qualify for representation by the PD's office and requested a continuance for Turski to obtain private counsel.  *Id.*  The court granted the request and continued the arraignment for April 20, 2018. ECF Doc. 5-1 at 7; ECF Doc. 5-2 at 3.

On April 20, 2018, the municipal court inquired into whether Turski had retained private counsel.  ECF Doc. 5-2 at 7.  The following inquiry ensued:

| | |
|---|---|
| [Turski]: | Um, no.  … [C]an I address [t]he Court, please? |
| The Court: | Not without speaking to your attorney. |
| [PD]: | I told him to go ahead, Judge. |
| The Court: | And you don't have an attorney.  Are you going to get an attorney? |
| [Turski]: | Being that I'm incarcerated -- |
| The Court: | Continued to Monday, for an attorney, April 23rd … . |

*Id.*  Despite the continuance, Turski indicated that he could not afford an attorney while incarcerated.  *Id.*  The court responded that it would not release him from confinement given the seriousness of the allegations in the affidavits.  *Id.*  Turski added, abruptly: "And also we live together."  *Id.*  The PD told Turski that was a confession and to stop.  ECF Doc. 5-2 at 8. Interpreting Turski's statements as relevant to the issue of release on bond, the court quoted a portion of the affidavit and reaffirmed that it would not reduce the bond amount or release Turski.  *Id.*

On April 23, 2018, a PD requested that the PD's office be appointed to represent Turski and that the court schedule a preliminary hearing for May 2, 2018.  ECF Doc. 5-2 at 12.  The

3

court found that Turski was indigent and granted both requests.  ECF Doc. 5-1 at 7; ECF Doc. 5-2 at 12.

On May 2, 2018, the municipal court entered a *nolle prosequi* and dismissed Turski's charges.  ECF Doc. 5-1 at 7.  The transcript of preliminary hearing reads:

[Defense Counsel]:    The State's requesting a Nolle Prosequi, Judge.  The case is being presented to the Grand Jury.

The Court:    All right.  Then the case is ordered dismissed.

ECF Doc. 5-2 at 16.[4]

### B.    Common Pleas Court

On May 2, 2018, a Lucas County, Ohio, grand jury issued an indictment charging Turski with one count of aggravated burglary ("Count One"); one count of kidnapping ("Count Two"); one count of second-degree burglary ("Count Three"); one count of menacing by stalking ("Count Four"); and one count of bribery ("Count Five").  ECF Doc. 5-1 at 8–11.  Counts One and Two were based on events which allegedly took place on April 16, 2018.  ECF Doc. 5-1 at 9.  Count Three was based on events which allegedly took place on April 17, 2018.  ECF Doc. 5-1 at 10.  Turski was appointed new counsel, and he pleaded not guilty.  ECF Doc. 5-1 at 13.

On September 24, 2018, Turski changed his plea pursuant to a negotiated plea agreement.  ECF Doc. 5-1 at 15, 17; ECF Doc. 5-3 at 2.  Turski agreed to enter a no-contest plea pursuant to *Alford* to all but Count Five, and the state agreed to dismiss Count Five and recommend a total ten-year sentence.  ECF Doc. 5-1 at 15–16; ECF Doc. 5-3 at 2–4.  During the plea colloquy, Turski stated that:

(i)    Turski had an 11th-grade education, had obtained a GED, could read/write/understand English, and neither had a condition nor had

---

[4] Although not reflected on the transcript, the state indicated in Turski's state post-conviction proceedings that defense counsel's statements were made as the prosecutor provided the court a signed document recommending a *nolle prosequi* dismissal.  ECF Doc. 5-1 at 551.

ingested a substance that would affect his ability to understand the proceedings (ECF Doc. 5-3 at 5–6).

(ii)      Turski had not been threatened, coerced, or induced by a promise other than the recommended sentence to enter his plea (ECF Doc. 5-3 at 6).

(iii)      Turski understood that by entering an *Alford* plea he maintained his innocence, but the court could still find him guilty of the charged offenses if the state presented a sufficient factual basis to establish the elements of the offenses (ECF Doc. 5-3 at 7–8).

(iv)      Turski understood that the penalties for each offense, including possible sentences of incarceration, post-release control, and fines (ECF Doc. 5-3 at 8–9).

(v)      Turski understood that by pleading he was waiving his rights to: (a) a trial by jury who could only convict him by a unanimous finding that the state proved the elements beyond a reasonable doubt; (b) appointed counsel at trial; (c) cross-examine witnesses who testified against him; (d) compel witnesses to testify on his behalf; and (e) remain silent at trial and not have his silence used against him (ECF Doc. 5-3 at 11–12)

The state gave the following factual proffer to support a conviction on Counts One, Two,

and Three:

> … [Turski] was in a relationship with the mother of his child and she discovered earlier this year, possibly toward the end of 2017, that [Turski] was having a … sexual relationship[] with the victim in this case, Jessica Cureton.  [Turski's wife] confronted [him] about it, indicat[ing] that she was going to kick him out of the home unless the behavior stopped.  That began a series of events where Mr. Turski began filing incident reports with the Toledo Police Department indicating that Ms. Cureton was harassing him.  Ms. Cureton also filed some reports as well indicating that she was the subject of harassing and menacing behavior.
>
> In the early morning hours of April 16th, 2018, Ms. Cureton arrived at her residence at 5202 Garden Park Drive, Toledo, Ohio, which is in Lucas County, entered her home and discovered that [Turski] was present.  [Cureton] indicated that she confronted [Turski] with regards to why he was present.  They got into a verbal altercation that turned violent.  [Cureton] indicated that Mr. Turski was not wearing a shirt and had some oily substance on his body.  In an effort to defend herself, she indicated that she did scratch him several times, but he had picked her up and body slammed her, which knocked her unconscious.  She regained consciousness again and he assaulted her again and she was rendered

5

unconscious.  She did regain consciousness a third time and was able to leave the residence and go to a neighbor's residence and ring the doorbell to ask for help.

[The state] would have brought in the testimony of those two individuals that lived at that residence.  The wife wanted to open the door and let [Cureton] in, [the] husband was concerned about what was going on and didn't want to bring violence into their home and advised his wife to call 911, which she did.  But what [the wife] would have testified to is that [Turski] came onto their porch, grabbed Ms. Cureton and dragged her back to her residence where he began assaulting her again, and it was at that time that Ms. Cureton was able to get away and get to another residence, and when police arrived, [Turski] had fled.  They believe he had fled in [Cureton's] motor vehicle because her keys were missing but the car was moved from her driveway to another location down the street.

The following day [Turski] attempted to contact Ms. Cureton several times, had several phone calls with her, made several threats indicating that, you know, if she said anything to anyone, he was going to kill her.  He went to her place of employment looking for her, and then he subsequently went to her home.  The State would have presented video evidence from a Cellebrite report with data that was taken out of [Turski's] phone, in which [Turski] actually videotaped himself at [Cureton's] residence on April 17th, 2018.  He indicated on the video that he was recording the incident to … ensure that there was no question that he was not attempting to have a negative interaction with her that day in the event that something were to occur, that he was just looking to obtain his grinder.  He knocked on the door several times and there was no answer.

During the course of the recording, the neighbors who had called 911 the night before noticed Mr. Turski, asked him what he was doing there, and he indicated he was looking for Ms. Cureton, and when they asked who he was, he said, just let her know Terrance is looking for her, but clearly on the video it's Mr. Turski.

Mr. Turski was taken into custody on April 18th, 2018, and he was interviewed by Detective White.  During that time he was asked whether he was at Ms. Cureton's home on the 17th, however, he indicated he was not.  Obviously video evidence would refute that.  However, Ms. Cureton had contacted the police on the 17th because her home had been broken into and some items were missing, and that is where the State believes that the defendant was involved with regard to Count Three.

During the course of his interview with Detective White, Mr. Turski was advised that Ms. Cureton indicated that she had scratched him with his fingernails.  He proceeded to lift up his shirt and show Detective White he had no marks on his body and he felt that was going to exonerate him; however, Ms. Cureton was taken to Toledo Hospital and an assault exam was performed.

Fingernail scrapings were submitted to Ohio BCI and [Turski's] Y-STR DNA appeared in those fingernail samples.

It should be noted that when the warrant was executed at the Lucas County Correction Center for [Turski's] DNA, there was audio recorded and he advised Detective White that if his DNA was under [Cureton's] fingernails it was because they had engaged in[] rough sex on that day.  He was trying to make an excuse for why his DNA would be under her fingernails.

… Additionally, there were several attempts by Mr. Turski to get the mother of his child to set up an alibi with him that he was with her on the weekend in question, and he also communicated with an individual named Roy Carter.  And part of the alibi that he was trying to establish with the mother of his child was that he was doing something called a hell run where he was going and dealing with several accounts throughout the State of Ohio with Mr. Carter and he wanted the mother of his child to corroborate when he was at her residence and when he was on the hell run.

The problem is, Mr. Carter would testify that Mr. Turski had asked him to lie about the hell run because he was never on that hell run, and actually made statements to Mr. Carter that corroborated the fact that a physical altercation did occur.  Mr. Carter would have testified that the defendant said to him, she was stumbling around the house and made it seem like she was breaking her own stuff.  We got into a fight.  She scratched him and he had to defend himself and he threw her down, and she got back up and then just passed out, and he was confused as to why somebody would just pass out in the middle of an altercation.

ECF Doc. 5-3 at 13–17.

In support of a conviction on Count Four, the state further proffered that:

… On the 17th, either prior to or after breaking into [Cureton's] home, [Turski] was calling her numerous times from various phone numbers threatening to, quote, beat her to death or until she's a vegetable.  Again, during the course of those phone calls when there was a break in the action, he did go to her place of employment, attempted to communicate with her there, but she was not working at that time, and created a little bit of disruption for the staff that was there.  And, I guess, part of the menacing by stalking can actually involve the burglary considering the fact that he actually went to her home, entered the home on that same day as well, so that would constitute a pattern of behavior.  And that could even stretch into the 16th as well … considering that both instances involve the same victim.

ECF Doc. 5-3 at 18.

The trial court accepted Turski's plea and, based on the state's proffer, found him guilty of Counts One through Four.  ECF Doc. 5-1 at 19; ECF Doc. 5-3 at 19.  The court then sentenced Turski to an aggregate ten-year prison term and dismissed Count Five.  ECF Doc. 5-1 at 20; ECF Doc. 5-3 at 23.

### C.      Direct Appeal

On October 9, 2018, Turski timely appealed through new counsel.  ECF Doc. 5-1 at 26. Turski filed an appellate brief, asserting two assignments of error: (i) he was denied his right to a speedy trial; and (ii) trial counsel was ineffective for not objecting on speedy trial grounds to the state's requests for continuances.[5]  ECF Doc. 5-1 at 35–47.  The state filed an appellee brief. ECF Doc. 5-1 at 48–63.  And on September 6, 2019, the Ohio Court of Appeals overruled Turski's assignments of error and affirmed his convictions.  ECF Doc. 5-1 at 97–106; *State v. Turski*, 2019-Ohio-3604 (Ohio Ct. App. 2019).  Turski did not appeal to the Ohio Supreme Court.

### D.      Ohio App. R. 26(B) Application

On December 10, 2019, Turski filed an application to reopen his direct appeal pursuant to Ohio App. R. 26(B), followed by an amended application.  ECF Doc. 5-1 at 107, 195.  Turski argued that there were five issues appellate counsel was ineffective for not raising:

(i)      Turski's *Alford* plea was not knowing and voluntary (ECF Doc. 5-1 at 108–10).

(ii)     The municipal court failed to inquire into Turski's eligibility for appointed counsel pursuant to Ohio Crim. R. 44 (ECF Doc. 5-1 at 110).

(iii)    The municipal court failed to inform Turski at his initial appearance of his rights under Ohio Crim. R. 5 and 44 (ECF Doc. 5-1 at 110–11).

---

[5] Because neither assignment of error is at issue in Turski's current petition, his supporting arguments are omitted.

8

 (iv) The municipal court failed to explain the dangers of self-representation on April 19 and 20, 2018 (ECF Doc. 5-1 at 111).

 (v) Turski was denied a valid preliminary hearing by the municipal court and defense counsel's deficient performance (ECF Doc. 5-1 at 111–15).

Of these issues, Turski's application only elaborated on issues (i) and (v).  In support of issue (i), Turski argued, as relevant here, that the state's proffer was insufficient to establish the elements of second-degree burglary.  ECF Doc. 5-1 at 108–09.

In support of issue (v), Turski argued that he was entitled to a preliminary hearing before the municipal court pursuant to Ohio Crim. R. 5(B)(2) because no indictment had been returned.  ECF Doc. 5-1 at 111–12.  Had a hearing been held and defense counsel not been ineffective, Turski argued that he would have prevailed over his burglary charges.  ECF Doc. 5-1 at 112–15.  Specifically, Turski argued that he would have prevailed had defense counsel not failed to introduce: (i) a police report showing that he resided at Cureton's address; and (ii) a search warrant affidavit indicating that he had gone to Cureton's residence to retrieve his property.  ECF Doc. 5-1 at 112–13.  He further argued that trial counsel was ineffective for advising him to "plead guilty" despite knowing that he and Cureton lived together, which vitiated the trespass element of burglary.  ECF Doc. 5-1 at 114.

Turski attached to his Rule 26(B) application an April 9, 2018 police report of a domestic violence incident between Cureton and her ex-boyfriend, Ryan Cooper, on April 9, 2018.  ECF Doc. 5-1 at 131–32.  According to the police report: (i) Cooper drove up to Cureton's residence as Cureton and Turski were leaving and yelled at them; (ii) Cureton drove off with Turski; and (iii) Cooper followed her, during which he damaged her driver-side door and yelled at her.  ECF Doc. 5-1 at 132.  Turski also attached a search warrant affidavit, in which the affiant stated, in relevant part, that: (i) on April 15, 2018, Turski "forced" his way into Cureton's home, waited for her, and assaulted her; (ii) on April 17, 2018, Turski "again forced his way back into the

home to collect some of his property;" (iii) witnesses observed Turski at least twice exit Cureton's house, whom Turski told that "he was only there to get some of his property and that he had permission" from Cureton; and (iv) at the time of his arrest, Turski resided at 4905 Burnham Ave., Toledo.  ECF Doc. 5-1 at 150–51.

On December 27, 2019, Turski filed a motion for a delayed appeal and a memorandum to establish cause for his delayed Rule 26(B) application.  ECF Doc. 5-1 at 207–12.  Turski asserted that he delivered his application for mailing on Tuesday, November 26, 2019, but it was not processed until Monday, December 2, 2019, and not mailed until Wednesday, December 4, 2019.  ECF Doc. 5-1 at 208.  Turski argued that the delay was beyond his control and that the court should apply the "prison mailbox rule."  ECF Doc. 5-1 at 208–12.

Turski attached to his memorandum, among other things, prison grievance complaints regarding the delay in processing his Rule 26(B) application.  ECF Doc. 5-1 at 217, 228.  Turski was advised that the mailroom was closed on November 30, 2019 and that his cash slip was not received until December 2, 2019.  ECF Doc. 5-1 at 217, 228.  He was also told that the mailroom made daily trips to the post office to deliver items ready for mailing.  ECF Doc. 5-1 at 226.

The state filed an opposition brief, to which Turski replied.  ECF Doc. 5-1 at 237–46; ECF Doc. 5-1 at 258–69; *see also* ECF Doc. 5-1 at 276–86 (amended reply).  On January 24, 2020, the Ohio Court of Appeals denied Turski's Rule 26(B) application.  ECF Doc. 5-1 at 301–08.  Initially, the court determined that Turski's application was untimely because it was not filed until December 10, 2019, five days after the filing deadline.  ECF Doc. 5-1 at 303.  The court rejected Turski's argument for the application of the prison mailbox rule in light of Ohio caselaw rejecting it.  *Id.*

The Ohio Court of Appeals alternatively determined that Turski's Rule 26(B) application failed on the merits.  The court found that the state's proffer of the following facts was sufficient to satisfy the elements of Count Two: "[O]n April 17, Turski was seen knocking on the [Cureton's] door several times; [Turski] left after being confronted by neighbors who had called 911 to report the incident the night before.  [Cureton] later reported to police that her home had been broken into and several items were stolen." ECF Doc. 5-1 at 305–06.

With respect to Turski's municipal court-related errors, the Ohio Court of Appeals found them improperly before the court because those proceedings predated his felony proceedings and took place in a different court, the record of which was not before the court on direct appeal. ECF Doc. 5-1 at 306–07 (citing *State v. Davis*, 2006-Ohio-2350, ¶21 (Ohio Ct. App. 2006)). The court further determined that the Turski's municipal-court related arguments were nevertheless meritless, reasoning:

> … The docket from [the] municipal court shows that the matter was continued on multiple occasions so that [Turski] could obtain counsel.  On April 23, 2018, [Turski] was found to be indigent and a public defender was appointed.
>
> Turski further argues that he was denied a fair preliminary hearing under Crim.R.5(B)(2) where he could have refuted the burglary charge on the basis that he lived with [Cureton].  ***
>
> Again, reviewing the Toledo Municipal Court docket, it reveals that the matter was, in fact, set for a preliminary hearing and witnesses were subpoenaed.  On the date of the scheduling hearing, a nolle prosequi was entered as appellant had been indicted by the grand jury.  At that point, the county court had exclusive jurisdiction over the proceedings.  ***

ECF Doc. 5-1 at 307–08.

On February 13, 2020, Turski moved to expand the time within which to file an application for reconsideration pursuant to Ohio App. R. 26(A)(1) and attached a proposed

application.  ECF Doc. 5-1 at 340–41, 344–56.  On June 29, 2020, the Ohio Court of Appeals

denied the motion as moot.  ECF Doc. 5-1 at 377–78.

Meanwhile, on March 6, 2020, Turski sought jurisdiction in the Ohio Supreme Court

over the rejection of his Rule 26(B) application.  ECF Doc. 5-1 at 379–80.  Turski's

memorandum in support of jurisdiction raised three propositions of law:

(i)     The trial court erred in accepting his plea when there was an insufficient
        factual basis to establish the elements of second-degree burglary, and trial
        counsel was ineffective in advising Turski to enter an *Alford* plea with an
        insufficient supporting factual basis (ECF Doc. 5-1 at 386–92).

(ii)    The municipal court erred when failed to: (a) inform Turski of his rights
        under the Ohio Criminal Rules; (b) inquire into whether he was eligible
        for appointed counsel; and (c) explain the dangers of self-representation
        on April 19 and 20, 2018 (ECF Doc. 5-1 at 393–97).

(iii)   Turski was deprived of a valid preliminary hearing (ECF Doc. 5-1 at 397–
        98).

Turski's arguments in support of these propositions of law largely echoed his arguments in

support of the five issues he raised in his Rule 26(B) application to reopen.  *See* ECF Doc. 5-1 at

387–97.  On April 28, 2020, the Ohio Supreme Court declined to accept jurisdiction.  ECF Doc.

5-1 at 408.

### E.     Petitions for Post-Conviction Relief

On November 21, 2019, Turski filed a petition for post-conviction relief, followed by an

amended petition, raising ten claims, six of which are relevant to his Turski's federal habeas

petition:

(i-ii)  The municipal court failed to inform Turski at his initial appearance of his
        rights, including his right to counsel, or appoint counsel, under Ohio Crim.
        R. 5, 10, and 44 (ECF Doc. 5-1 at 415–18, 452–56).

(iii)   The municipal court failed to explain the dangers of self-representation on
        April 19 and 20, 2018 (ECF Doc. 5-1 at 419–20, 456–57).

12

(vi, ix)  The municipal court deprived Turski of a valid preliminary hearing, and trial counsel was ineffective for not presenting evidence of his residence and for advising him to plead guilty (ECF Doc. 5-1 at 422–23, 426–31, 463–70).

(vii)  The municipal court improperly dismissed his case when it did so solely on the basis of defense counsel's oral representations (ECF Doc. 5-1 at 423–26, 460–62).

With the exception of his seventh claim, Turski's arguments in support of his petition for post-conviction relief echoed the arguments he asserted in his Rule 26(B) application to reopen. *See* ECF Doc. 5-1 at 415–20, 422–23, 425–31, 452–57, 460–70.  In support of his seventh claim, Turski argued that the *nolle prosequi* dismissal was improperly entered because it was presented to the court by defense counsel, contrary to Ohio Rev. Code § 2941.33.  ECF Doc. 5-1 at 423–24.

The state filed a memorandum in opposition.  ECF Doc. 5-1 at 540–59.  In addressing the issue of the *nolle prosequi* dismissal, the state asserted that a prosecutor was present at the May 2, 2018 hearing, who, at the time defense counsel remarked on the dismissal, submitted to the municipal court a written recommendation to dismiss *nolle prosequi* Turski's charges.  ECF Doc. 5-1 at 551.  The state attached to its opposition a signed proposed *nolle prosequi* dismissal request on Turski's municipal court charges.  ECF Doc. 5-1 at 560.

On February 27, 2020, Turski moved to strike the signed *nolle prosequi* dismissal as fraudulent and filed a response to the state's memorandum in opposition.  ECF Doc. 5-1 at 561–63, 565–68, 600–29.  The state filed a response and surreply.  ECF Doc. 5-1 at 638–41.  The stated also attached to its surreply an affidavit attesting to the authenticity of the signed *nolle prosequi* dismissal request.  ECF Doc. 5-1 at 642.  Turski then made additional filings addressing the *nolle prosequi* dismissal and responding to the state's surreply.  *See* ECF Doc. 5-1 at 646–704.

13

On May 12, 2020, the trial court denied Turski's petition for post-conviction relief.  ECF Doc. 5-1 at 705–14.  The court first reasoned that Turski's petition was untimely by two days and that Turski had not established good cause for his late filing.  ECF Doc. 5-1 at 707–08. Alternatively, the court determined that Turski's claims failed on the merits.  With respect to Turski's municipal-court-error claims, the trial court found them belied by the record.  ECF Doc. 5-1 at 709.  With respect to the *nolle prosequi* dismissal, the court found that the record reflected that it was properly entered in compliance with Ohio Crim. R. 48(A) and Ohio Rev. Code § 2941.33.  ECF Doc. 5-1 at 709–10.

With respect to Turski's challenge to the validity of his plea, the trial court found the issue barred by the doctrine of res judicata.  ECF Doc. 5-1 at 711.  The court further reasoned that Turski knowingly and voluntarily entered his plea, and that the state's proffer was strong evidence of his guilt to all his charges.  ECF Doc. 5-1 at 711–12.  And the trial court concluded, without elaboration, that that a review of the record showed that trial counsel was at all times competent and effective, and that Turski failed to establish that he would not have enter his plea but for counsel's alleged errors.  ECF Doc. 5-1 at 710.

On October 16, 2020, Turski filed in the Ohio Court of Appeals a second petition for post-conviction relief, reasserting his arguments of municipal-court error, the insufficiency of the factual basis for his second-degree burglary conviction, and the invalidity of the *nolle prosequi* dismissal.  ECF Doc. 5-1 at 733–72.  On December 2, 2020, the court denied Turski's second petition for post-conviction relief.  ECF Doc. 5-1 at 844.

## II.    Analysis

### A.    Threshold Issues

#### 1.    Procedural Default

The procedural default doctrine precludes federal review if the petitioner has failed to follow the state's procedural requirements for presenting his federal claims in state court.  *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  Thus, we will not consider claims which: (i) were not fairly presented to the state courts and cannot be presented to them now; (ii) and claims which the state court rejected on the basis of an adequate and independent state procedural ground.  *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).  But when the issue of procedural default raises more questions than the merits, we may proceed straight to the merits.  *See, e.g.*, *Watkins v. Lafler*, 517 F. App'x 488, 498 (6th Cir. 2013); *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003).

Although each and every one of Turski's claims implicates the procedural default doctrine, it is simpler to resolve Turski's claims on other grounds.  To illustrate why, I will provide an abbreviated procedural default analysis.

Turski's claims were all raised for the first time in his petition for post-conviction relief in the trial court.[6]  Turski's claims could be procedurally defaulted in one of three ways.  Turski's claims would be procedurally defaulted because the trial court initially determined that his petition for post-conviction relief was untimely,[7] which is an adequate an independent basis

---

[6] Although Turski's Rule 26(B) application raised many of the issues Turski argued in his petitions for post-conviction relief, they were raised in terms of ineffective assistance of appellate counsel.  *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not to preserve the underlying claim … .").
[7] The trial transcript was filed on November 19, 2018, such that Turski's petition for post-conviction relief was due 365 days later (November 19, 2019) and his November 21, 2019 petition for post-conviction relief was untimely by two days.  Ohio Rev. Code § 2953.21(A)(2)(b); ECF Doc. 5-1 at 871 (docket sheet).

upon which to deny relief and which would foreclose federal review of his claims. *Williams*, 460 F.3d at 809; ECF Doc. 5-1 at 708; *see also* Ohio Rev. Code § 2953.21(A)(2)(b) (requiring petitions for postconviction review to be filed within 365 days of when the trial transcripts are filed on direct appeal); *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 219 (6th Cir. 2019) (holding that § 2953.21(A)(2)(b) is an adequate and independent state procedural ground). Turski's claims would alternatively be procedurally defaulted because he never appealed the trial court's or the Ohio Court of Appeals' rejection of his grounds for relief.  ECF Doc. 5-1 at 844; *see* Docket for Lucas Cnty. Ct. of Com. Pleas, No. G-4801-CL-201801217; *see also Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (requiring that claims be raised at every stage of state review).  And Turski's Ground One claim, specifically, would be procedurally defaulted because the trial court rejected the claim as barred by Ohio's res judicata doctrine, which is another adequate and independent state procedural rule which forecloses federal habeas review.  ECF Doc. 5-1 at 711; *see also Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000).

To overcome his procedural default, Turski would have to show cause and prejudice.[8] *Coleman*, 501 U.S. at 750.  Turski could be able to – as he has attempted to do here – establish cause by arguing that appellate counsel was ineffective for not raising his claims on direct appeal.  *Chase v. Macauley*, 971 F.3d 582, 591–92 (6th Cir. 2020); ECF Doc. 1 at 5–7.  But the Ohio Court of Appeals determined that Turski's Rule 26(B) application to reopen raising his

---

[8] The fundamental miscarriage of justice (actual innocence) basis to excuse procedural default is not implicated by any of Turski's claims.  The only argument that comes close is his assertion that the police report and search warrant affidavit would have defeated his burglary charges.  But neither document establishes that Turski was a resident of Cureton's house between April 16 and April 17, 2018.  At most, the documents establish that Turski was a guest at Cureton's house on April 9, 2018 and maintained his own residence elsewhere.  ECF Doc. 5-1 at 132, 150–51; *see also Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Bowens v. United States*, No. 4:14-CV-1097, 2014 U.S. Dist. LEXIS 156693, at *3 (N.D. Ohio Nov. 5, 2014) (defining actual innocence).

grounds for relief was untimely, which is itself an adequate and independent state procedural rule. *Baker v. Bradshaw*, 495 F. App'x 560, 565–66 (6th Cir. 2012); ECF Doc. 5-1 at 302–03.

In order for Turski to overcome his default of the claims in his habeas petition, Turski would have to first overcome the procedural default of his claims of ineffective assistance of appellate counsel.  *See Edwards v. Carpenter*, 529 U.S. 446, 451, 453 (2000).  Turski can arguably establish cause to excuse his procedural default because he delivered his Rule 26(B) application on November 26, 2019, nine days before the December 5, 2019 filing deadline.  Ohio App. R. 26(B)(1); ECF Doc. 5-1 at 217, 228; *see also Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003) (holding that a prisoner may establish good cause when he delivers his petition "in sufficient time for it to arrive in the normal course of events" and that five days was sufficient under the facts presented).[9]  He could also arguably establish prejudice.  *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) (assuming prejudice under *Maples* and concluding that the untimely filing did not result in procedural default).

That brings us to the reason why I recommend the Court proceed directly to the merits.  Although Turski could arguably establish *cause*, that would still leave the issue of whether Turski can establish *prejudice* to overcome the default of his substantive claims.  In Turski's case, an analysis into prejudice necessarily overlaps with the underlying merits analysis.  Rather than have duplicate analyses, I will address the other, substantive reasons why Turki's claims fail

---

[9] Warden Watson attempts to distinguish from *Maples* by arguing that even nine days was not sufficient time in light of the intervening holiday and weekend.  ECF Doc. 5 at 22–23.  On the current record, I am not persuaded.  There is no indication in the record that the prison mailroom was closed on November 26 or 27, 2018.  And according to prison mailroom staff, it took one day to process payment and one day to weigh the mail, with daily pick-ups for delivery to the post office.  ECF Doc. 5-1 at 226, 228.  It is at least possible that, had the prison mailroom acted as diligently on November 26 as it did on December 2, Turski's application would have been received, processed, mailed, and delivered before the December 5, 2019 deadline.  *Cf. Taylor v. Sheldon*, No. 1:18 CV 231, 2019 U.S. Dist. LEXIS 227784, at *25 (N.D. Ohio Jan. 3, 2019) (finding eight days to be enough), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 31627 (N.D. Ohio Feb. 25, 2020).

to establish a basis for relief.  *See Caraballo v. Bracy*, No. 1:16 CV 3024, 2018 U.S. Dist. LEXIS 128019, at *10 (N.D. Ohio July 12, 2018).

### 2.      Voluntariness of Turski's Plea

A no-contest plea pursuant to *Alford* has the same legal effect as a guilty or no-contest plea.  *Williams v. Sheets*, No. 1:04cv403, 2006 U.S. Dist. LEXIS 102009, at *22 (S.D. Ohio June 27, 2006) (citing *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003); *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982)).  Thus, a habeas petitioner who enters an *Alford* plea is generally limited to claims attacking the knowing and voluntary nature of his plea.  *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

For a plea to be knowing and voluntary, the defendant must be fully aware of the direct consequences of his plea and must enter his plea free of coercion and inducement.  *Brady v. United States*, 397 U.S. 742, 755 (1970).  Whether a plea is knowing and voluntary is determined based on the totality of the circumstances surrounding the plea.  *Garcia v. Johnson*, 991 F.2d 324, 327 (6th Cir. 1993).  A state court's determination that a plea was proper is presumed correct unless, unless the plea transcript is inadequate to establish that the plea was knowing and voluntary.  *Id.*

As will be discussed in more detail below, the scope of our review of the merits of Turski's claims is affected by whether Turski's plea was knowing and voluntary.  The trial court determined that Turski's plea was knowing and voluntary.  That determination is entitled to a presumption of correctness and deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See* 28 U.S.C. § 2254(a), (e)(1).  To rebut the presumption, Turski would have to present clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  And to overcome AEDPA deference, Turski would have to show that the state court's decision was contrary to, or

involved the unreasonable application of, clearly established federal law as determined by the Supreme Court or involved an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

Turski has not come forward with evidence to rebut the trial court's finding that his plea was knowing and voluntary. Nor has Turski attempted to establish that he was unaware of the direct consequences of his plea or that it was the result of coercion or inducement. *See generally* ECF Doc. 1; ECF Doc. 1-1; ECF Doc. 6. Thus, I find that the state court's determination that Turski's plea was knowing and voluntary was neither contrary to, nor involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1); *see also Roberts v. Gansheimer*, No. 1:10 CV 2619, 2012 U.S. Dist. LEXIS 43348, at *18–19 (N.D. Ohio Mar. 29, 2012).[10]

### B. Ground One

In his Ground One claim, Turski raises two issues. Turski argues that the state's factual proffer at his change of plea hearing was insufficient to establish the elements of second-degree burglary. ECF Doc. 1 at 5; ECF Doc. 1-1 at 8–9. Founded on his claim of an insufficient factual basis, Turski then argues that trial counsel was ineffective for advising him to plead guilty to Count Three. ECF Doc. 1-1 at 10.

Warden Watson argues that that Turski's challenge to the sufficiency of the evidence to support his plea was waived by his *Alford* plea. ECF Doc. 5 at 20–21. The warden further argues that the Ohio courts reasonably determined that the proffer was sufficient to establish the elements of second-degree burglary. ECF Doc. 5 at 27–32.

---

[10] Whether Turski's plea was supported by a sufficient factual basis will be discussed in conjunction with the merits of his Ground One claim.

1.      **Cognizability**

I disagree with Warden Watson that Turski's Ground One claim has been waived by his *Alford* plea or is otherwise noncognizable.  An attack on the sufficiency of the evidence to support a conviction is among the issues waived by guilty or no-contest pleas because such pleas necessarily involve an admission by the defendant to each element of the offenses to which he pleaded.  *United States v. Freed*, 688 F.2d 24, 25–26 (6th Cir. 1982).  When a defendant enters an *Alford* plea, however, he does not admit to any of the acts alleged in the indictment or to his guilt.  *Alford*, 400 U.S. 25 at 37.

Warden Watson argues that the waiver principle applicable to guilty and no-contest pleas applies also to *Alford* pleas.  ECF Doc. 5 at 20–21.  Of the authorities the warden cited to make that argument, only two concern *Alford* pleas.  But neither case held that an *Alford* plea waives a sufficiency challenge to the factual basis of the plea on federal habeas review.  *See Price v. Johnson*, 218 F. App'x 274, 275 (4th Cir. 2007) (holding than a petitioner's confusion over whether he entered an *Alford* plea or a guilty plea was harmless because, under *Virginia law*, an *Alford* plea also waives a sufficiency challenge); *Perry v. Commonwealth*, 533 S.E.2d 651, 653 (Va. Ct. App. 2000) (holding than a defendant's *Alford* plea forfeited a challenge to the sufficiency of the evidence on direct review).

Furthermore, a plea does not waive a challenge to the effectiveness of counsel's performance in advising the defendant to plead guilty when the deficiency bears on the voluntariness of the plea.  *Tollett v. Henderson*, 411 U.S. 258, 267–68 (1973); *see also Bell v. Parish*, No. 20-2192, 2021 U.S. App. LEXIS 21464, at *9 (6th Cir. July 20, 2021) (unreported).  Whether there was a sufficient factual basis for to make out the elements of a charge to which a

person pleads guilty bears on the issue of voluntariness.  *See Eggers v. Warden, Lebanon Corr. Inst.*, 826 F.3d 873, 876 (6th Cir. 2016).

That brings us to cognizability.  The Constitution does not require that states inquire into the factual basis of a plea.  *Id.*  Challenges to the sufficiency of the factual basis to support a plea are therefore generally not cognizable on federal habeas review.  *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 582–83 (E.D. Mich. 2001); *see also e.g.*, *Al-Khafajy v. Dist. Dir.*, No. 3:19-cv-00248, 2020 U.S. Dist. LEXIS 176764, at *23 (M.D. Tenn. Sept. 25, 2020); *Person v. Gray*, No. 5:18-CV-01374, 2020 U.S. Dist. LEXIS 251307, at *21 (N.D. Ohio Apr. 2, 2020).  But when, as here, the petitioner expressly maintains his innocence during the plea colloquy, *Alford* requires that there be a factual basis for the plea.  *Eggers*, 826 F.3d at 876; *see also Alford*, 400 U.S. at 38 n.10; ECF Doc. 5-3 at 7–8.

I find that Turski's Ground One claim is not subject to dismissal on cognizability grounds.

### 2. Merits

#### a. Sufficiency

A person can commit burglary in the second degree by forcefully trespassing in someone's residence when the resident is likely to be present, with the purpose to commit a criminal offense in the dwelling.  *See* Ohio Rev. Code § 2911.12(A)(2).  The "force" requirement for burglary can be satisfied by opening a closed but unlocked door.  *State v. Hibbard*, Nos. CA2001-12-276/CA2001-12-286, 2003 Ohio App. LEXIS 676, at *12 (Ohio Ct. App. 2015).

The trial court's determination that there was a sufficient factual basis to establish the elements of second-degree burglary was not contrary to *Alford*.  The trial court acknowledged

*Alford*'s requirement that it ensure that a strong factual basis for Turski's guilt existed before it could accept his plea and adjudge him guilty. ECF Doc. 5-1 at 711; ECF Doc. 5-3 at 7–8. And the court reasonably determined that the factual basis was sufficient to establish the elements of second-degree burglary.

Although the trial court did not elaborate on its reasons for concluding that Turski's second-degree burglary conviction was adequately supported by a strong factual basis, AEDPA deference still applies. *Harrington*, 562 U.S. at 99. The burden is on Turski to show that "there was no reasonable basis for the state court to deny relief." *Id.* at 98. He has not met his burden.

Fair-minded jurists could disagree on the correctness of the trial court's determination on the sufficiency of the factual basis to support Turski's conviction on Count Three. *See Harrington*, 562 U.S. at 102–03. The facts proffered at the plea colloquy established that on April 17, 2018: (i) Turski had threatened to kill Cureton in a phone call and had gone to her place of employment looking for her; (ii) Turski recorded himself at Cureton's residence stating that he was looking to retrieve his "grinder;" (iii) Turski knocked on the door several times but no one answered; (iv) Turski left after being confronted by neighbors, identifying himself as "Terrance;" and (v) Cureton reported the next day that her house had been broken into and that several items were missing. ECF Doc. 5-3 at 15. One could reasonably conclude that Turski forcefully entered Cureton's house from his threats, his statement that he wanted to retrieve his grinder, and Cureton's report that someone had broken in. *See Hibbard*, Nos. CA2001-12-276/CA2001-12-286, 2003 Ohio App. LEXIS 676, at *12. One could also reasonably conclude from Turski's conduct, including his surprise entry to Cureton's house the day before, that Cureton was likely to be present at the time of the burglary and that he entered her home with criminal intent (take her belongings or harm her). ECF Doc. 5-3 at 13–14.

Turski argues that it was unreasonable for the state courts to conclude from the state's factual basis that he did anything more than knock on Cureton's door. ECF Doc. 1-1 at 8–9. Although Turski may disagree with the state courts' conclusions, that alone is not sufficient. Under AEDPA, whether I or the Court – or Turski – believes the state court got it wrong is irrelevant. *Shriro v. Landrigan*, 550 U.S. 465, 474 (2007). What matters is whether the state court's decision was unreasonable, "a substantially higher threshold." *Id.* Here, it wasn't. The court had a reasonable right to infer that there was strong evidence that Turski's conduct met the elements of a second-degree burglary offense.

### b.  Ineffective Assistance of Trial Counsel

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, under which the petitioner must show that (i) trial counsel behaved unreasonably; and (ii) that unreasonable performance prejudiced the defense. 466 U.S. 668, 687 (1984). In the context of a guilty or no-contest plea, the prejudice prong requires the petitioner to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded [no-contest] and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The trial court's rejection of Turski's ineffective-assistance argument was neither contrary to, nor an unreasonable application of, *Strickland*. The trial court applied the *Strickland* deficiency and prejudice standard. ECF Doc. 5-1 at 710. And the trial court reasonably determined that Turski's argument lacked merit.

Although the trial court did not explain its reasons for concluding that Turski's ineffective-assistance argument lacked merit, Turski has failed to establish that there was no reasonable basis for that conclusion. *Harrington*, 562 U.S. at 98. The trial court separately determined that Turski's plea was supported by a sufficient factual basis. ECF Doc. 5-1 at 711.

As discussed above, that determination was reasonable. Because Turski's conviction for second-degree burglary was supported by a sufficient factual basis, Turski's ineffective-assistance argument necessarily lacked merit. *Cf. Unger v. Bergh*, No. 14-cv-11562, 2017 U.S. Dist. LEXIS 122260, at *33 (E.D. Mich. Aug. 3, 2017).

### 3. Ground One Summary

Because the state court had a reasonable basis for concluding that Turski's plea was supported by a sufficient factual basis and that trial counsel was not ineffective in advising Turski on his plea, I recommend that Turski's Ground One claim be DISMISSED as meritless.

### C. Grounds Two through Five

Turski's remaining claims are based on what transpired in his municipal court proceedings. In his Ground Two claim, he argues that his constitutional rights were violated on April 19 and 20, 2018, when the Ohio municipal court did not inform him of his rights under Ohio Crim. R. 5 and 44 and did not determine his eligibility for appointed counsel. ECF Doc. 1-1 at 11–12. In his Ground Three claim, he argues that the municipal court allowed him to proceed pro se on April 19 and 20, 2018 without first explaining to him the dangers of self-representation. ECF Doc. 1-1 at 12–13. In his Ground Four claim, he argues that the municipal court denied him a valid preliminary hearing and that his attorney was ineffective for not presenting evidence at the hearing to defeat his burglary charges. ECF Doc. 1-1 at 14–16. And in his Ground Five claim, he argues that the *nolle prosequi* dismissal was improperly entered by the municipal court. ECF Doc. 1-1 at 15, 18–19.

Warden Watson argues that Turski has waived the ability to collaterally challenge the propriety of his municipal court proceedings by virtue of his *Alford* plea. ECF Doc. 5 at 19–20.

The warden further argues that these grounds for relief otherwise lack merit.  ECF Doc. 5 at 26–30.

### 1.    Cognizability

As stated above, an *Alford* plea has the same legal effect as a guilty or no-contest plea. *Williams*, No. 1:04cv403, 2006 U.S. Dist. LEXIS 102009, at *22; *see also, e.g.*, *Grigsby v. Bottom*, No. 3:17-CV-463, 2020 U.S. Dist. LEXIS 72007, at *12 (W.D. Ky. Apr. 23, 2020); *Morrison v. Warden*, No. 2:14-CV-00312, 2016 U.S. Dist. LEXIS 37035, at *7 (S.D. Ohio Mar. 22, 2016).  Thus, when a defendant enters an *Alford* plea, he waives his ability to assert non-jurisdictional claims based on pre-plea events.  *Williams*, No. 1:04cv403, 2006 U.S. Dist. LEXIS 102009, at *21–22.

I agree with Warden Watson that Turski is foreclosed from being able to contest the propriety of his municipal court proceedings on federal habeas review.  As discussed above, Turski's *Alford* plea was knowing and voluntary.  Thus, Turski's *Alford* plea limits Turski to constitutional claims challenging the trial court's jurisdiction over his criminal proceedings and the voluntariness of his plea.  Turski's Ground Two through Five claims all allege error in his municipal court proceedings.  But Turski stands convicted pursuant to a judgment by the common pleas court, not the municipal court.  "[T]he jurisdiction of a common pleas court over a criminal action does not hinge upon the propriety of the proceedings before the municipal court." *Gotel v. Gansheimer*, 2007-Ohio-2311, ¶11 (Ohio Ct. App. 2007).[11]  Turski has not alleged in

---

[11] Turski's claims of municipal court error would be non-jurisdictional even if they were analyzed individually.  Initial-appearance claims are not jurisdictional.  *See United States v. Price*, 50 F. App'x 968, 968 (10th Cir. 2002); *Maines v. United States*, No. 3:13-CV-4631-B, 2015 U.S. Dist. LEXIS 176089, at *52 (N.D. Tex. June 2, 2015); *Cantu v. Stephens*, No. 5:13-CV-919, 2014 U.S. Dist. LEXIS 120036, at *17 (W.D. Tex. Aug. 28, 2014).  A preliminary hearing is not a jurisdictional prerequisite under Ohio law.  *State v. Zarlengo*, 182 N.E.3d 458, 466 n.3 (Ohio Ct. App. 2021).  And the propriety of Turski's common pleas proceedings would have been unaffected by any error in the dismissal of his municipal court case.  *See Leyman v. Bradshaw*, 2015-Ohio-751, ¶13 (Ohio Ct. App. 2015).

what way the errors alleged in Grounds Two, Three, Four, and Five impacted the voluntariness of his *Alford* plea.  And although Turski alleged that a preliminary hearing would have impacted his plea because evidence would have been presented establishing his residence at Cureton's house, neither the police report nor the arrest warrant affidavit he submitted in state court established that he was a resident of Cureton's house at the time of the offense.  *See* ECF Doc. 5-1 at 132, 150–51.  Thus, Turski's claims in Grounds Two through Five are foreclosed by his *Alford* plea.  *See Mabry*, 467 U.S. at 508; *Tollett*, 411 U.S. at 267–68; *Williams*, No. 1:04cv403, 2006 U.S. Dist. LEXIS 102009, at *21–22.

I recommend that Turski's Ground Two, Three, Four, and Five claims for relief be DISMISSED as noncognizable.

### 2. Merits

Even if Turski's claims were not barred by his *Alford* plea, I would recommend that they be dismissed for lack of merit.

### a. Ground Two

Although framed as a violation of his due process and counsel rights, Turski's Ground Two claim asserts only that the municipal court failed to comply with Ohio Crim. R. 5(A) (listing rights of which the defendant must be informed upon initial appearance) and Ohio Crim. R. 44 (requiring the assignment of counsel to an indigent defendant charged with a serious offense).  ECF Doc. 1-1 at 11–12.  Specifically, Turski argues that the municipal court erred by not informing him of his right to counsel.  *See id.*  The municipal court's alleged failure to abide by Ohio's criminal rules is an issue of state law, which, if true, would not automatically establish a due process violation.  *Rivera v. Illinois*, 556 U.S. 148, 160 (2009) ("[E]rrors of state law do not automatically become violations of due process.").  Turski could only obtain federal habeas

relief if the "error amounts to a fundamental miscarriage of justice or a violation of the right to due process … ."  *Cristini v. Mckee*, 526 F.3d 888, 897 (6th Cir. 2008).

Turski is correct that he was not informed his right to counsel on April 19 and 20, 2018. *See* ECF Doc. 5-2 at 3, 7–8.  The municipal court's failure to do so was arguably error.  Ohio Crim. R. 5(A)(2); Ohio Crim. R. 10(C).  But any error did not amount to a fundamental miscarriage of justice or a violation of Turski's due process rights because he was represented at both proceedings by a PD.  *Rothgery v. Gillespie Cnty.*, 544 U.S. 191, 213 (2008) (holding that the right to counsel attaches at an initial appearance before a judicial officer).  And the PD was formally appointed to represent Turski on April 23, 2018.  ECF Doc. 5-2 at 12.

Should the Court prefer to do so, Turski's Ground Two claim could be dismissed as meritless.

### b. Ground Three

Turski's Ground Three claim contends that he was permitted to represent himself on April 19 and 20, 2018 without first being advised of the dangers of self-representation, in violation of *Faretta v. California*, 422 U.S. 806 (1975).  ECF Doc. 1-1 at 12–13.  Under *Faretta*, the Sixth Amendment guarantees the right to counsel and the right to self-representation upon a knowing and voluntary waiver of the right to counsel.  *Moore v. Haviland*, 476 F.Supp. 2d 768, 775 (N.D. Ohio 2007).  In Turski's case, however, there was no *Faretta* issue because Turski was represented by a PD at both proceedings and Turski did not assert a desire to represent himself.  Thus, the trial court's rejection of Turski's Ground Three claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court.  28 U.S.C. § 2254(d)(1).

Should the Court prefer to do so, Turski's Ground Three claim could be dismissed as meritless.

### c. Ground Four

Turski's Ground Four claim primarily argues that the municipal court deprived him of his right to a preliminary hearing on May 2, 2018. But the error alleged is a violation of Ohio Crim. R. 5(B)(2). ECF Doc. 1-1 at 31. Thus, Turski would have to establish that the lack of a preliminary hearing constituted a fundamental miscarriage of justice or a violation of his federal due process rights. *See Cristini*, 526 F.3d at 897. He cannot do so because there is no right to a preliminary hearing under the Constitution. *Porter v. Nessel*, No. 2:15-cv-12704, 2019 U.S. Dist. LEXIS 17818, at *33 (E.D. Mich. Feb. 4, 2019) (collecting cases).

Turski's Ground Four claim also challenges his municipal court attorney's failure to present evidence at the May 2, 2018 hearing. Turski has not established that the trial court's summary rejection of that argument lacked a reasonable basis. *Harrington*, 562 U.S. at 98. The state intended to dismiss Turski's municipal court charges on May 2, 2018. ECF Doc. 5-1 at 642. Because Turski's municipal court charges were going to be dismissed, one could reasonably conclude that it would have served no purpose for counsel to test whether there was probable cause to support his charges. *See Harrington*, 562 U.S. at 105 (the question under AEDPA is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards"). One could also reasonably conclude that Turski suffered no prejudice because, by issuing the indictment, the grand jury necessarily found probable cause. *State ex rel. Lipschutz v. Shoemaker*, 49 Ohio St.3d 88, 90 (1990). And, as discussed above, the evidence Turski argues would have been presented and would have defeated probable cause did not

actually establish that he resided at Cureton's house at the time of the offense, such that it would not have impacted his decision to enter an *Alford* plea. *See Hill*, 474 U.S. at 59.

Should the Court prefer to do so, it could dismiss Turski's Ground Four claim for lack of merit.

### 3. Ground Five

Turski's Ground Five claim asserts that the impropriety of the *nolle prosequi* dismissal of charges in the municipal court violated his due process rights. ECF Doc. 1-1 at 18. Specifically, Turski argues that the *nolle prosequi* dismissal entered by the municipal court failed to comply with Ohio Crim. R. 12, Ohio Rev. Code § 2941.33, and a treatise on Ohio criminal practice and procedure. *Id.* But whether the *nolle prosequi* dismissal was entered in compliance with Ohio law is an issue of state law. And Turski has not attempted to establish how that impropriety resulted in a fundamental miscarriage of justice or a violation of his federal due process rights. *See Cristini*, 526 F.3d at 897. More to the point, Turski has not established how an error in the dismissal of his municipal court charges made his conviction on Counts One through Four of the indictment issued in his common pleas court case unconstitutional. *State ex rel. Pesci v. Lucci*, 2007-Ohio-1547, ¶12-13 (Ohio Ct. App. 2007) (holding that errors in the dismissal of municipal court charges had no impact on the common pleas proceedings).

Should the Court prefer to do so, it could dismiss Turski's Ground Five claim for lack of merit.

### D. Grounds Two through Five Summary

Because Turski's municipal court error claims are foreclosed by Turski's *Alford* plea and, alternatively, meritless, I recommend that Turski's Ground Two, Ground Three, Ground Four, and Ground Five claims be DISMISSED.

### III.    Certificate of Appealability[12]

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a certificate of appealability

("COA") for an issue raised in a §2254 habeas petition only if the petitioner has made a

substantial showing of the denial of a federal constitutional right.  *Cunningham v. Shoop*, 817 F.

App'x 223, 224 (6th Cir. 2020).  A petitioner satisfies this standard by demonstrating that

reasonable jurists "could disagree with the district court's resolution of his constitutional claims

or that jurists could conclude the issues presented are adequate to deserve encouragement to

proceed further."  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quotation marks omitted); *see also*

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a claim is denied on procedural grounds,

the petitioner must show "that jurists of reason would find it debatable whether the petition states

a valid claim of the denial of a constitutional right and that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

If the Court accepts my recommendations, Turski will not be able to show that the

Court's rulings on his claims are debatable among jurists of reason.  Turski's Ground One claim

is meritless.  And Turski's claims for relief in Grounds Two through Four are barred by his

*Alford* plea and meritless.  Because jurists of reason would not find these conclusions to be

debatable, I recommend that no COA issue in this case.

---

[12] In light of the requirement that the Court either grant or deny a certificate of appealability at the time of its adverse order, a recommendation regarding the certificate of appealability is included.  Rule 11(a), 28 U.S.C. foll. § 2254.

## IV. Recommendation

Because Turski's claims are noncognizable and/or meritless, I recommend that his claims be DISMISSED and that his petition for writ of habeas corpus be DENIED.  I further recommend that Turski not be granted a COA.

Dated: August 10, 2022

Thomas M. Parker
United States Magistrate Judge

---

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge.  "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, \*6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).